**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *McCombs*, 7:20-cv-94 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

**ORDER**

This matter is before the Court on Plaintiff Dustin McCombs' Motion for Judgment as a Matter of Law ("JMOL") under Federal Rule of Civil Procedure 50(a) on the duty and breach elements of his negligence *per se* claim, Defendants' "excuse" defense to his negligence *per se* claim, Defendants' superseding cause defense, and Defendants' affirmative sophisticated intermediary defense.[1] Oral argument was heard on May 27, 2021. Having now fully considered the parties' arguments and the applicable law, the Court concludes that McCombs' motion is due to be granted, in part, and denied, in part.

**I.     Legal Standard**

JMOL is appropriate where a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that

---

[1] Defendants pled the sophisticated intermediary doctrine as an affirmative defense in their Amended Answer to Master Long Form Complaint. *See* MDL Dkt. No. 959 at 99–100.

issue. *Ledbetter v. Goodyear Tire & Rubber Co., Inc*., 421 F.3d 1169, 1177 (11th Cir. 2005) (citing Fed. R. Civ. P. 50(a)).  When considering such a motion, a court must "review the entire record, examining all the evidence, by whomever presented, in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor."  *Id*.  In doing so, the court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury.  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).  A motion for JMOL should be granted "only if the facts and inferences point so overwhelmingly in favor of the [moving party] that [a] reasonable [jury] could not arrive at a contrary verdict." *Bogle v. Orange Cty. Bd. of Cty. Comm'rs*, 162 F.3d 653, 656 (11th Cir. 1998).

## II.     Discussion

### A. Duty & Breach Elements of Negligence *Per Se* Claim

For the reasons stated in the Court's Order denying Defendants' motion for summary judgment on McCombs' negligence *per se* claim, *see* ECF No. 64 at 13–16, the Court finds that the Environmental Protection Agency's ("EPA") regulations governing the labeling of hearing protection devices and the Noise Control Act ("NCA") establish the applicable duty and standard of care. However, the Court finds that there is a sufficient evidentiary basis for a reasonable jury to find that Defendants did not violate the EPA regulations or the NCA. Accordingly, McCombs' motion for JMOL on the duty element of McCombs' negligence *per se* claim is **GRANTED**.

McCombs' motion for JMOL on the breach element of McCombs' negligence *per se* claim is **DENIED**.

### B. "Excuse" Defense to Negligence *Per Se* Claim

The Court finds McCombs is entitled to JMOL on Defendants' "excuse" defense to his negligence *per se* claim. As a threshold matter, the Court is persuaded by McCombs' argument that Defendants waived the defense because Defendants did not give at least reasonable notice in their pleadings of both their intent to assert the defense and of the specific excuses they intended to rely on.[2] Alaska Pattern Jury Instruction 3.04(A) enumerates six excuses, and the parties agree that this list is not exhaustive. Even if the defense is not an affirmative defense, it would be a strange feature of Alaska law if a defendant was not required to provide at least reasonable notice in its pleadings to a plaintiff as to which of the numerous excuses—whether enumerated in Pattern Jury Instruction 3.04(A) or not—it intends to assert at trial.

But even if this were not the case, the Court would still find that McCombs is entitled to JMOL on Defendants' "excuse" defense. First, Defendants, relying solely on Elliot Berger's testimony that he did not believe that the EPA regulations or NCA applied to the CAEv2, assert the second enumerated excuse in Pattern Instruction 3.04(A): that they "did not know ***and*** should not have known that [they] needed to

---

[2] Defendants' inclusion of Pattern Jury Instruction 3.04(A) in their proposed jury instructions does not constitute reasonable notice.

follow the law." (emphasis added). While Berger's testimony provides a sufficient evidentiary basis to support a jury finding that Defendants did not believe that the EPA regulations or NCA applied to the CAEv2, there is no evidence—zero—from which a reasonable jury could find that Defendants *should not have known* that the EPA regulations or NCA applied to the CAEv2. In fact, the evidence is to the contrary. *See* Trial Tr. (5/26/2021) at 217 (John Casali testifying that Berger "has some significant leadership roles – with ANSI standards committees"); Unofficial Trial Tr. (5/27/2021) at 55 (Casali testifying that Berger "testif[ied] in front of the EPA"). Second, Defendants assert the sixth enumerated excuse in Pattern Instruction 3.04(A): that "the meaning of the law was obscure or unreasonable and the defendant acted with reasonable care in attempting to obey it." However, there is no evidence in the record from which a reasonable jury could find that the EPA regulations or NCA were "obscure or unreasonable." Indeed, the case cited by Defendants in support of their argument, *HDI-Gerling Am. Ins. Co. v. Carlile Transp. Sys., Inc.*, 426 P.3d 881 (Alaska 2018) is readily distinguishable on this basis. In *Carlile*, "the evidence at trial showed without contradiction drivers, experts, and regulators" did not understand the regulation at issue. *See* 426 P.3d at 888. There is no such evidence in the record here. Accordingly, McCombs' motion for JMOL on Defendants' "excuse" defense to his negligence *per se* claim is **GRANTED**.

## C. Superseding Cause Defense

After considering both the Restatement and the law cited by the parties during oral argument, the Court finds that there is jury question as to whether, in hindsight, it is highly extraordinary that Defendants' conduct would have brought about McCombs' harm. Accordingly, McCombs' motion for JMOL on Defendants' superseding cause defense is **DENIED**.

## D. Affirmative Sophisticated Intermediary Defense

Manufacturers generally owe a duty to warn foreseeable users of known dangers inherent in their products. *See Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 842 (Alaska 2001); *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984). Most jurisdictions have carved out one or more limited exceptions to the rule, which allow a manufacturer to "discharge" its duty to warn by adequately warning a sufficiently knowledgeable or sophisticated  intermediary who purchases the product and/or controls its availability to the ultimate users. *See, e.g.*, *Webb v. Special Elec. Co., Inc.*, 370 P.3d 1022, 1027 (Cal. 2016) (discussing various intermediary defenses).  Alaska has explicitly adopted the most commonly invoked intermediary exception—the learned intermediary doctrine—which gives manufacturers of prescription drugs a defense if they have adequately informed prescribing physicians, as opposed to patients directly, of risks associated with their drugs. *See Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 n.6, 1200 (Alaska 1992); *Specter v. Tex. Turbine Conversions, Inc.*, No. 3:17-cv-

194, 2021 WL 218720, at *6 & n.47 (D. Alaska Jan. 21, 2021).  Physicians serve as "learned intermediaries" between drug manufacturers and patients, as patients can only obtain prescription products through their physicians, and physicians, through specialized education and experience, are generally in the best position to evaluate the potential risks and benefits of a particular drug, and to advise their patients accordingly. *See Shanks*, 835 P.2d at 1195 ("In a sense, prescribing doctors are the consumers of prescription drugs. It is the doctor's evaluation of the patient's condition and consideration of the available treatment alternatives which leads to the choice of a specific prescription drug product.").

A small number of states—at least nine, according to Defendants—have also adopted another variant of the intermediary exception, the so-called "sophisticated intermediary" doctrine, which gives a manufacturer a defense if it warned certain intermediate purchasers of its product of the known and knowable hazards in the product's use, and reasonably relied on those purchasers to pass on adequate warnings to end users. *See, e.g., Webb*, 370 P.3d at 1027.  Where available, the sophisticated intermediary doctrine generally has been extended in circumstances where: (1) the manufacturer lacked knowledge and/or control over how their product would be used or what the product might ultimately become; (2) the manufacturer had little ability to reasonably predict who potential end-users would be; and/or (3) the form or nature of the product—particularly raw materials and industrial products, such as chemicals,

metals or sand—made it impossible or impractical for the manufacturer to provide effective warnings to end-users. *See, e.g., Webb*, 370 P.3d at 1033–38.

Alaska has not expressly adopted or applied the sophisticated intermediary doctrine. Nevertheless, Defendants insist that "[i]f confronted with a case that presented facts for which the sophisticated intermediary defense would actually apply, Alaska courts would readily adopt the doctrine" and, in their view, the instant case is precisely that.  The Court disagrees.

To begin with, it is not at all clear that Alaska would adopt the sophisticated intermediary doctrine as a general proposition. As Defendants themselves observe, "the Restatement of Torts has recognized the defense for nearly sixty years." *See* Def. Brief, ECF No. 74 at 3.  However, in that time, there has not been a single reported decision in Alaska doing the same. As already discussed, Alaska has explicitly adopted the learned intermediary doctrine with respect to prescription drugs,  *see Shanks*, 835 P.2d at 1194 n.6, 1200, but "the *Shanks* Court made clear that the learned intermediary defense has a limited application" and "Alaskan courts have not expanded the defense in the nearly thirty years since *Shanks* was decided," *see Specter*, 2021 WL 218720, at *9.[3]  Defendants cite no authority that would support a conclusion that Alaskan courts would recognize a variant of that rule, like the sophisticated intermediary doctrine,

---

[3] The Court is not persuaded by Defendants' argument that *Specter* supports their position.

which greatly expands those bounds.[4]  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) ("Federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law."); *Pincus v. Am. Traffic Sols., Inc.*, 986 F.3d 1305, 1310 (11th Cir. 2021) (federal courts in diversity cases must determine issues of state law in "the way it appears the state's highest court would" decide them based on relevant state law precedents).

Even assuming theoretically that Alaska would adopt the sophisticated intermediary doctrine, it would not be available here.  Indeed, the Court has not found a single case—anywhere—in which the doctrine was applied to an ordinary consumer product marketed and sold directly to the general public, like the CAEv2.[5]  None of the sophisticated intermediary cases identified by Defendants involved such a product. *See, e.g.*, *Webb*, 370 P.3d at 176 (crocidolite asbestos used in manufacturing Transite pipe); *Gray v. Badger Mining Corp.*, 676 N.W.2d 268 (Minn. 2004) (silica sand supplied to foundry for use in creating molds for shaping metal); *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155 (Ind. Ct. App. 1997) (chemical odorant added to natural gas supply); *Gajewski v. Pavelo*, 670 A.2d 318 (Ct. 1996) (gas fired boiler installed by

---

[4] Perhaps the Eleventh Circuit, in its discretion, will find it appropriate to certify this question to the Alaska Supreme Court. However, there being no indication in Alaskan jurisprudence that it would adopt the sophisticated intermediary doctrine and, in fact, undeniable indications that it would reject the doctrine, this Court will not certify the question.

[5] If the sophisticated intermediary doctrine were recognized here, it would be the first and only case in the country where the doctrine was applied to an ordinary consumer product marketed and sold directly to the general public.

a licensed plumber); *Swan v. I.P., Inc.*, 613 So. 2d 846 (Miss. 1993) (polyurethane roofing materials installed by polyurethane roofing contractor); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588 (Tex. 1986) (closure system for applying aluminum caps to carbonated soft drink bottles); *Jones v. Hittle Serv., Inc.*, 549 P.2d 1383 (Kan. 1976) (chemical odorant added to propane gas supply); *Schmeiser v. Trus Joist Corp.*, 540 P.2d 998 (Or. 1975) (truss joists used in roof construction); *Morris v. Shell Oil Co.*, 467 S.W.2d 39 (Mo. 1971) (industrial use petroleum solvents); *see also Parker v. Schmiede Mach. & Tool Corp.*, 445 F. App'x 231 (11th Cir. 2011) (beryllium-containing products supplied to aircraft manufacturing plant); *Freeman v. United Cities Propane Gas of Ga., Inc.*, 807 F. Supp. 1533 (M.D. Ga. 1992) (chemical odorant added to propane gas); *Persons v. Salomon N. Am.*, 265 Cal. Rptr. 773 (Cal. Ct. App. 1990) (ski bindings supplied to shop that selected and rented skis and bindings).  And even in cases where an intermediary was implicated—a sophisticated intermediary purchaser of a chemical product, or a learned intermediary physician recommending a nonprescription medical product to a patient—courts have consistently refused to extend the intermediary doctrine to products available both directly to the intermediary and over-the-counter to ordinary consumers.  *See, e.g.*, *Hall v. Ashland Oil Co.*, 625 F. Supp. 1515, 1519 (D. Conn. 1986) (benzene sold both to large industrial purchaser and ordinary consumers); *Mitchell v. VLI Corp.*, 786 F. Supp. 966, 970 (M.D. Fla. 1992) (nonprescription contraceptive sponge given to patient by her physician); *Prager v.*

*Allergan, Inc.*, 1990 WL 70875 (N.D. Ill. May 2, 1990) (contact lens solution recommended by physician but available over-the-counter without prescription); *Torsiello v. Whitehall Lab'ys, Div. of Home Prods. Corp.*, 398 A.2d 132 (N.J. Super. Ct. App. Div. 1979) (over-the-counter drug containing aspirin recommended by physician). The *Shanks* court similarly indicated that the learned intermediary doctrine would not apply to "drugs typically administered in a clinical setting with little or no physician involvement, or drugs marketed under a strategy designed to appeal directly to the consuming public." *See Shanks*, 835 P.2d at 1195 n.7. Reading these authorities together, the basis for distinguishing ordinary consumer products is clear—the underlying rationale for the *intermediary* defense is lost where users could purchase and use the product *without* an *intermediary*. *See Hall*, 625 F. Supp. at 1519; *Mitchell*, 786 F. Supp. at 970 ("Considering that [plaintiff] could have obtained the [product] over-the-counter, it would be illogical to treat her differently based on the mere fortuity that she obtained a sample of the [product] from her physician."). No authority has been cited or found that would support a different conclusion. Consistent with that conclusion, the Court finds that Alaska would not extend the sophisticated intermediary doctrine to a product like the CAEv2, which was marketed and sold both to the military and directly to the general public, and declines to extend the doctrine here.[6]

---

[6] It is worth noting that even within the military, the CAEv2 was but one of numerous hearing protector options approved for use by service members, who could (and, sometimes, did) obtain the CAEv2 either directly from the military or by purchasing it in a retail store.

For these reasons, the Court concludes as a matter of law that the sophisticated intermediary doctrine does not apply in this case.   Alaska does not recognize the doctrine, and even if it did, it would not be available in this context.   Accordingly, McCombs' motion for judgment as a matter of law on the sophisticated intermediary defense is **GRANTED**.

**SO ORDERED**, on this 27th day of May, 2021.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**